IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| IRMA LEIBAS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2019 C 07592 |
| v. | ) | |
| | ) | The Honorable Judge Rebecca R. Pallmeyer |
| THOMAS J. DART, *et al.*, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

## **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS (Dkts. 11-12).**

Defendant Reierson is manipulating essential job functions lists by changing them to include putative essential job functions that intentionally conflict with Plaintiffs' medical restrictions. *First Amended Complaint* ("*FAC*"), ¶¶4(d), 51, 56. The lists also include marginal functions, rather than essential ones, are not representative of the true essential functions of the Plaintiffs' positions, and were developed using both the intent to conflict with medical restrictions in some cases, and slap-dash, capricious impulse in others, and, in any case, were not developed using any reliable method for the determination of true essential job functions. *FAC*, ¶¶48, 51, 52. Each Plaintiff has worked at the Sheriff's Cook County Department of Corrections ("CCDOC") or Court Services Department for years, most of the time with their existing restrictions, and have at all times been able to perform the Correctional Officer ("CO") or Deputy Sheriff ("DS") job satisfactorily. *FAC*, ¶¶3, 38, 42, 52, 53, 54. Rather than letting Plaintiffs alone, in late 2018, the Sheriff, through Reierson, subjected each of the Plaintiffs to, in fact, a fitness-for-duty evaluation conducted under the auspices of the ADA accommodation process. *FAC*, ¶¶4(a), (b), 39, 41, 44, 46, 49. None of the Plaintiffs requested an accommodation around that time, but were, instead, unilaterally contacted by Reierson because they had medical restrictions on the file.

The end result of this case – if it were to be dismissed – is that it would allow the Sheriff to plow wholesale ahead with a movement driven towards eliminating *all* officers with permanent medical restrictions from the CCDOC and Court Services, on its own, regardless of whether or not employees were seeking accommodations or are performing their jobs satisfactorily. Plaintiffs urge the Court not to read the ADA to allow employers to use it as a sword in such a manner, to allow this case to proceed on the existing FAC, and to deny the Motion to Dismiss (Dkt. 11-12) in its entirety for the following reasons.

**I.    Plaintiffs Have Adequately Plead ADA Discrimination In Count I.**

As to Count 1, Defendants argue that (1) Plaintiffs have not adequately plead that they are disabled under the ADA, and, (2) that the ADA allows employers to require medical examinations.

1. All Plaintiffs Have Adequately Plead That They Have A Disability Under The ADA Or Are Otherwise Covered Under The ADA's Subsection On Medical Examinations.

Plaintiffs have adequately plead that they have ADA-qualifying disabilities. *FAC*, ¶38. Plaintiff Leibas pleads that she has scleroderma, lupus, and raynaud's syndrome "which are skin and circulatory conditions that require her to wear gloves and a jacket at all times." *FAC*, ¶38(a). DiGioia pleads that she has fibromyalgia that "makes it more difficult for her to breathe" and that prevents her from wearing a vest at work. *FAC*, ¶38(b). Tague pleads shoulder arthritis that makes it difficult for her to qualify with a firearm. *FAC*, ¶38(c). Donis pleads a right knee restriction that prevents prolonged kneeling, squatting, standing, and running/walking for long distances. *FAC*, ¶38(d). Barker plead a stress-induced migraine condition. *FAC*, ¶38(e).  Most fatal to Defendants' argument, though, is that Plaintiffs plead that each one of them (except DiGioia) received a letter from Reierson which expressly stated that "[b]ased on the medical information on file with the Cook County Sheriff's Office (CCSO), it appears you are unable to

2

perform one or more of the essential functions of your position." *FAC*, ¶39. DiGioia has pleaded that she was notified verbally about the contents of this letter. *FAC*, ¶40.

Defendants state that these are bare allegations of medical restrictions without allegations of impairments to a major life activity. *Motion*, p.4. While Plaintiffs Leibas, Donis, DiGioia, and Tague have plead that their medical conditions in some way limit life activities expressly, all of the Plaintiffs meet the ADA's second and third definitions of a disability, *to wit*, that the Plaintiffs have records of an impairment and that the CCSO has regarded them as having an impairment. *See* 42 U.S.C. § 12102(2). This is plain from Reierson's letter to each of the Plaintiffs listed at Paragraph 39 or her verbal notice of same to DiGioia. *FAC*, ¶¶39-40. Under a "regarded as" theory of disability, "the plaintiff must prove either that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes that an existing impairment that is not really limiting does substantially limit a major life activity." *Nese v. Julian Nordic Construction Co.*, 405 F.3d 638, 641 (7th Cir. 2005). "In other words, the employer 'must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'" *Id.* (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001) and quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). Reierson's letter and verbal notice *prima facie* established that each Plaintiff has a disability under the "regarded as" definitions.

Worse for Defendants is the fact that <u>*all employees*</u>, regardless of whether or not they have a qualifying disability, are protected under the ADA's prohibition on medical examinations. *See* 42 U.S.C. § 121129d)(4)(A); *Wright v. Ill. Dep't of Children and Family Services*, 798 F.3d 513, 522 (7th Cir. 2015).

Defendants' cited cases are no help. *Cassimy v. Bd. of Educ. of Rockford Public Schools*, 461 F.3d 932, 936 (7th Cir. 2006), was a *summary judgment* case where the plaintiff did not produce enough evidence in discovery that his depression substantially limited major life activities. *Prince v. State Department of Revenue*, 73 F.Supp.3d 889, 895 (N.D. Ill. 2010), allowed an amendment of a complaint that merely referenced medical conditions without any explanation of how they met the other requirements for ADA-coverage. There was no clear argument under the "regarded as" definition from the *Prince* pleading, as there is here.

For these reasons, the Court should deny the Motion to Dismiss on this ground; however, if the Court should grant the Motion on this basis, it should allow amendment like *Prince*.

2. The Sheriff's Office Is Not Allowed To Require Fitness-For-Duty Examinations In The Manner It Is Doing In This Case Where The Inquiries Are Not Job-Related Nor Consistent With Business Necessity.

Defendants next claim that the ADA allows employers to "require medical examinations and/or to make inquiries as to an employee's disability." *Motion*, pp. 4-5. The problem is that this judicial district has already held that the issue of job-relatedness and business necessity in requiring an employee to undergo a fitness-for-duty examination is a question *for a jury*. *See Wright v. Ill. Dep't of Children and Family Services*, 798 F.3d 513, 523-524 (7th Cir. 2015). Under the EEOC's enforcement guidance, an "examination is job-related and consistent with business necessity when an employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Id.* at 522-23 (citing *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009) ("*Coffman*")). The employer's reasonable belief "must be based on *objective evidence* obtained, or reasonable available to the employer, prior to making a disability-related inquiry or requiring a medical examination." *Id.*

4

"Such a belief requires an assessment of the employee and his/her position and cannot be based on general assumptions." *Id.* So too, an employer must show that the asserted business necessity is vital to the business, as opposed to a mere expediency. *Id.* (noting accord of *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)). Such an examination must "genuinely serve the asserted business necessity and be a reasonably effective method for achieving the employer's goal." *Id.* (internal quotations omitted). "An employer cannot merely rely on reasons that have been found valid in other cases but must actually show that the requirement contributed to the achievement of those business necessities." *Id.* (internal quotations omitted). An employer's standard practice with regard to medical examinations is relevant evidence of necessity, as is differential application. *Id.* at 524.

Remarkable about the foregoing rules is the fact-intensive inquiry that they require in every case, and that the "job-related" and "consistent with business necessity" inquiries are questions of fact for juries to decide, not courts on motions such as this. The *Wright* court even treated these questions as if they are to be decided by juries, not on the pleadings. *See id.* at 524-26. Further, Defendants' Motion baldly asserts that the inquiries were job-related as follows: "[t]he Sheriff's Office's inquiry into the nature and severity of Plaintiffs' restrictions were job-related and consistent with its business necessity and were to ascertain the ability of the Plaintiffs to perform job-related functions." *Motion*, p.5. But what about the fact that Plaintiffs have plead that they all performed the CO and DS jobs for years with these same restrictions? *FAC*, ¶¶3, 38, 42, 52. This allegation completely undermines the employer's business necessity and job-relatedness assertion, as does the allegation that Reierson is manipulating the essential functions checklists specifically to force out employees with medical restrictions. *FAC*, ¶¶52-56 (compare the two checklists sent to Leibas and Barker, which are for the same job but contain different

5

essential functions and were from the same time period). The bottom line is that the Defendants may and certainly will raise "job-relatedness" and "business necessity" as a defense, but they cannot get this case dismissed on those bases for exactly the reason that these questions are for a jury to decide (or at a minimum are for summary judgment).

The employer's cited cases are no help. *Malkowski v. PTC Capital Corp.*, 1998 WL 142374 at *4-5 (N.D. Ill. 1998) is a summary judgment case, but also involved an employee who refused to submit to a medical examination, who had a stroke resulting in him missing only one day of work that did not constitute a "disability" under the ADA, and who did not show that the employer even knew about the stroke. *Coffman* was also decided on summary judgment, not on the pleadings, and the analysis took the form of analyzing multiple sources of evidence justifying a medical inquiry that are not present in this case. 578 F.3d 559 (7th Cir. 2009). *Atkinson v. SG Americans Sec., LLC*, 693 Fed. Appx. 436, 440 (7th Cir. 2017) – respectfully -- appears to misstate the applicable regulations on medical examinations, none of which allow an employer to escape the job-related and consistent with business necessity inquiry. *See* 29 C.F.R. § 1630.14(c) (providing that covered entities may require medical examinations of employees that are "job-related" and "consistent with business necessity."). The latter regulation further cautions that medical inquiries of current employees "shall not be used for any purpose inconsistent with this part." 29 C.F.R. § 1630.14(c)(2). Plaintiffs plead Defendants are using the ADA as a sword to fish out employees with permanent medical restrictions from the workplace. *FAC*, ¶¶4, 52, 57. While the regulations do not loosen the "job-related" requirement, even if they did, the same regulations prohibit using the medical examination process for improper purposes such as intentional discrimination. Plaintiffs submit that using the ADA to eliminate employees with permanent medical restrictions is such an improper purpose.

For the foregoing reasons, the Court should deny Defendants' Motion as to Count I.

## II.     Plaintiffs Have Adequately Plead An Equal Protection Deprivation In Count II.

1. *Engquist* Does Not Bar Plaintiffs' Claims, And This Jurisdiction Uses A Rational Basis Test For Disability Claims Under The Equal Protection Clause.

Defendants argue that *Engquist* bars class-of-one Equal Protection claims in employment. This argument fails because this is not a "class of one" case, and *Engquist* has since been staunchly recognized as not applying to "suspect classification" -based Equal Protection claims such as this one. *See, e.g.*, *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) (recognizing the difference between class-of-one EP claims, and suspect class ones, while citing to *Engquist*).

More on point, though, is *Arce v. Chicago Transit Authority*, 193 F.Supp.3d 875, 893 (N.D. Ill. 2016), which discusses whether or not disability-based Equal Protection claims are permissible in this jurisdiction. It concludes that they are. *Id.* at 894. While Judge Feinerman acknowledged conflicting cases on this issue from the Tenth and Second Circuit Courts of Appeals, he followed the Seventh, Ninth, Sixth, and First Circuits Courts of Appeals' approaches of using a "rational basis" test. *Id.* He applied such a test to an individual's discrimination claims brought under the Equal Protection clause. *Id.* Judge Feinerman recognized that "[t]he burden is on the challenger to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *D.B. ex rel. Kurtis v. v. Kopp.*, 725 F.3d 681, 686 (7th Cir. 2013)); *see also Srail v. Village of Lisle, Ill.*, 588 F.3d 940 (7th Cir. 2009). Here, Plaintiffs have plead that the Sheriff's Office is using the ADA as a means to fish out employees with permanent medical restrictions, despite that these employees have been performing these jobs for a long time with their restrictions. *FAC*, ¶¶4, 52, 57. This is not a rational basis for subjecting Plaintiffs to fitness-for-duty examinations and ousting them from their positions under

the Equal Protection clause. Indeed, this jurisdiction expressly recognizes that proof of illegitimate animus may be part of proving a lack of rational basis. *See, e.g.*, *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 944 (7th Cir. 2009) (containing a good discussion on this issue and citing to *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) and *Lunini v. Grayeb*, 395 F. 3d 761, 768 (7th Cir. 2005)). Defendants argue that Plaintiffs are not members of a suspect class as persons with disabilities. *Motion*, p. 8. *Arce* and cases cited in it belie this argument, but, regardless Defendants' cited cases *still* apply rational basis review to disability-based claims. *See United States v. Harris*, 197 F.3d 870, 876 (7th Cir. 1999) ("Therefore, we apply rationality review to claims of discrimination made by persons in this class."). Worse, Defendants cite to *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010), but that case supports Plaintiffs' claim by showing that *Engquist* does *not* bar all employment-based Equal Protection claims, nor does *Abcarian* say anywhere that disability is not a suspect classification.

      Defendants baldly claim that Plaintiffs have not pled that Defendants' acted without a rational basis, citing to *Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008), and *Miller v. Illinois Department of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997). Again, both of these were summary judgment decisions. *Dargis*, 526 F.3d 981 at 983; *Miller*, 107 F.3d 483 at 484. So too, the *Miller* plaintiff was near-blind and required a seeing-eye dog. *Id.* at 484. The *Dargis* plaintiff suffered a stroke and had upwards of five separate medical restrictions that severely limited where he could work. *Dargis*, 526 F.3d 981 at 983. All of the Plaintiffs in this case (1) have been working with the permanent restrictions and can perform their jobs just fine, and (2) have comparatively limited restrictions when compared with the broad and severe restrictions on the *Miller* and *Dargis* plaintiffs. For example, Leibas needs to wear gloves and a jacket, DiGioia needs to not wear a vest, Donis needs to avoid kneeling, squatting, standing, and

running/walking for long periods of time, Tague needs to not qualify with a firearm, and Barker needs to avoid high stress. *FAC*, ¶38.

Defendants do not tell the Court what their claimed-basis is for their medical inquiries and ouster / attempted ouster of Plaintiffs from their long-held positions, but they seem to suggest they want Plaintiffs to be fungible. *See Motion*, p.9. The problem is that not only have the Plaintiffs alleged that they can perform their jobs and, thus, are fungible (*FAC*, ¶3), but also that Reierson is changing the essential functions with the specific purpose of fishing them out of the workplace and including essential functions that are only marginal in order to do so. *FAC*, ¶57 (pleading this). "The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "The term 'essential functions' does not include the marginal functions of the position." *Id.* EEOC regulations instruct that:

Evidence of whether a particular function is essential includes, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

*Id.*; *see also Stragapede v. City of Evanston*, 69 F.Supp.3d 856, 863-64 (N.D. Ill. 2014). Here, Plaintiffs have alleged that they are being subjected to essential functions checklists that contain "marginal functions," and that they have been performing their jobs adequately for years. *FAC*, ¶¶4(d), 51 (paragraph 51 specifically follows the regulation).[1] All of this goes back to the

---

[1] For the Court's knowledge, there is a case pending at the summary judgment before Judge Kness (formerly assigned to Judge Chang) dealing with this very regulation and the extent to which marginal versus essential functions are being utilized in the "Essential Functions" determination at the Cook County Sheriff's Office. Cross-Rule 56 Motions are pending. *See generally Tate v. Dart*, 17-cv-0888, Dkts. 78-80, 103-104.

concern in *Wright* that the "job-relatedness" defense be a matter for the jury. So should the rationality test with this pleading.

    2.   Plaintiffs May State A 42 U.S.C. § 1983 Claim Along With The ADA Here.

Defendants next argue that the ADA provides a comprehensive framework for addressing interactive process-based claims, and it is improper to state such claims under 42 U.S.C. § 1983. If Plaintiffs were pleading a run-of-the-mill interactive process violation, Defendants would have a point; however, their claims encompass (i) forced fitness-for-duty evaluations, (ii) *fait accompli* outcomes of forced medical evaluations based upon sham essential job functions lists, (iii) untrue, tailored, and manipulated essential job functions list that guarantee Plaintiffs will be found unable to perform their essential job functions, and (iv) being unilaterally approached by the Employer and subjected to fitness inquiries without the Plaintiffs even asking for accommodations, and without the Employer having any basis to ask except for long-on-file medical restrictions. *FAC*, ¶¶4, 40, 50. The Court need look no further than the included Lists given to Leibas and Barker to see that, in fact, Reierson was manipulating and changing these lists depending on whom she was giving them to. *FAC* ¶¶48, 54, 55. Also noteworthy is that DiGioia's list explicitly references that wearing a "vest" is part of essential job function, which very conveniently is the thing DiGioia is not supposed to do – and CCDOC officers also wear vests in some units, such as External Operations, but that is not part of their essential functions list – why the difference, unless Reierson is just adding to these lists on whimsy? *FAC* ¶¶48, 54, 55. *Dargis v. Sheahan* dealt only with a narrow interactive-process claim that, in fact, was entirely premised on the ADA – no substantive right to an interactive process would exist without the ADA. However, this case pleads that the fitness-for-duty inquiries are done with impermissible motives underlying them – that is, to fish out employees with permanent medical

restrictions from the workplace on a widespread basis. *FAC* ¶56; *see Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 944 (7th Cir. 2009); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); *Lunini v. Grayeb*, 395 F. 3d 761, 768 (7th Cir. 2005) (all recognizing impermissible motives as part of an Equal Protection rational basis analysis). *Tate v. Dart*, 2019 U.S. Dist. LEXIS 41341 at *6 (N.D. Ill. 2019) involved a straightforward attempt to plead a violation of the ADA's retaliation provision straight under 42 U.S.C. § 1983. Plaintiffs are not doing that here, but, instead, alleging numerous acts of differential treatment because of their medical restrictions, all being spearheaded by Reierson. Under these circumstances, Plaintiffs should be allowed to bring their 42 U.S.C. § 1983 claim like the Plaintiff did in *Arce*.

   3. <u>Plaintiffs Have Adequately Pleaded Differential Treatment.</u>

  Defendants briefly state that Plaintiffs have not adequately plead disparate treatment. They have. *See FAC* ¶¶ 53, 63, 67. Paragraph 64 even explains that alternative positions at the same rate of pay were offered to some disabled employees, but not to Plaintiffs. *FAC* ¶64.

 **III.** **Reierson Is Not Entitled To Qualified Immunity.**

  Defendants' qualified immunity argument is so undeveloped it almost precludes a response. *Motion*, pp. 9-10. Plaintiffs nonetheless incorporate their foregoing discussion on the ADA and the Equal Protection claims as evidence that the rights Plaintiffs' claim were violated are clearly-established. *See, e.g.*, *Arce v. Chicago Transit Authority*, 193 F.Supp.3d 875, 893 (N.D. Ill. 2016); *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010); *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 944 (7th Cir. 2009); *Wright v. Ill. Dep't of Children and Family Services*, 798 F.3d 513, 523-524 (7th Cir. 2015) (job-relatedness and business necessity questions for the jury). So too, Plaintiffs are claiming that their subjection to unwitting fitness-for-duty examinations based on untrue, and marginal, job functions, and to a sham interactive

11

process designed to guarantee Plaintiffs' failure, demonstrate a violation of the foregoing rights. *Spring-Weber v. City of Chicago*, 2017 WL 1316267 (N.D. Ill. 2017), dealt with warrantless drug testing of firefighters without an on-point decision from the Seventh Circuit, and was otherwise about a claimed violation of a right-to-privacy – that is not alleged in this case. *Id.* at *8-9. Accordingly, the Court should deny Defendants' Motion based on qualified immunity.

### IV. Plaintiffs Have Plead A *Monell*-Based Equal Protection Claim In Count III.

Defendants argue that there is no underlying constitutional deprivation to support a *Monell* claim to begin with. *Motion*, p.11. Plaintiffs refer to, and incorporate by reference, their argument in the prior section on the Equal Protection Clause as their response to this argument.

Defendants next state that Plaintiffs have not adequately alleged injurious action by a final policymaker, and then state that Defendant Reierson is not a final policymaker. *Motion*, p.11. However, Plaintiffs are not alleging that Reierson is a final policymaker, but rather that Dart is, and that Dart enacted policies and practices of subjecting Plaintiffs and similarly-situated officers to fitness-for-duty examinations under the auspices of the ADA accommodation process, subjecting them to essential functions analyses that are concocted, untrue, and comprised of marginal functions, and offering some employees with disabilities positions without a cut in pay, but not Plaintiffs. *FAC* ¶¶66-70. In other words, Plaintiffs are stating a practice-based *Monell* claim as well as a claim that Sheriff Dart (not Reierson) enacted the current set of complained-of policies. *See Logan v. City of Chicago*, 2018 WL 5279304, at *5 (N.D. Ill. 2018) (recognizing a low standard of pleading for *Monell* claims and that language not dissimilar from that here was sufficient to state a pattern-and-practice claim); *Consolino v. Dart*, 2019 WL 4450498 (N.D. Ill. 2019) (*Monell* claims need only abide by Rule 8(a)(2)'s requirement of a "short and plain statement of the claim"). It should also be noted that proof that the practice is widespread is in

the fact that this case has five Plaintiffs, all of whom have been subjected to the same set of practices. *FAC* ¶32. The count also pleads that the same practices are being imposed on "similarly-situated officers." *FAC* ¶¶67, 69. Accordingly, Plaintiffs have adequately stated *Monell* pattern-and-practice and final policymaker-based claims.

### V. Plaintiff DiGioia Has Adequately Plead An FMLA Claim In Count IV.

Defendants nitpick the FMLA interference and retaliation claim when it is perfectly obvious what Plaintiff DiGioia is alleging: she requested to use FMLA for a family member (not herself), and got a call back from Reierson asking her – DiGioia – to update her own medical restrictions. *FAC* ¶¶77-78. Then Reierson emailed DiGioia, in the same email chain where DiGioia was requesting FMLA for her family member, about DiGioia's own medical restrictions. *FAC* ¶79. This led to Reierson visiting DiGioia at her workplace and advising her that the restriction on not wearing a vest prevented DiGioia from performing the essential functions of the DS position. *FAC* ¶80. In other words, as stated as Paragraph 81, DiGioia's inquiring if she could use FMLA for her family member, triggered an immediate inquiry into DiGioia's own medical restrictions and fitness to perform her job functions – which had nothing to do with DiGioia's FMLA request. *FAC* ¶81. Defendants want to grouse that the FAC does not state that DiGioia was eligible for FMLA, that the Sheriff was covered by the FMLA, and that DiGioia did not allege other elements of an FMLA interference claim. *Motion*, p.11.

First, Defendants are partially wrong because the FAC pleads that the Sheriff is an FMLA-employer. *FAC* ¶18. Second, Plaintiff avers that she has plead enough to state both an interference and retaliation claim, and that Defendants are simply wasting time when the pleading makes it perfectly clear that DiGioia's inquiry into FMLA led immediately to her having her own fitness for duty in play. How is a reasonable employee in Plaintiff's position not

13

supposed to be dissuaded from inquiring about the FMLA when it can lead to inquiries about fitness-for-duty such as occurred to DiGioia? However, if the Court finds the count deficient on technicals (as opposed to notice pleading), Plaintiff requests leave to amend the count.

### VI. Plaintiffs Barker And Leibas Have Adequately Pleaded Due Process Claims.

This Court has recognized that Cook County CO's and DS's have a protected property interest in their continued employment. *Dargis v. Sheahan*, 2005 WL 946909 at *10 (N.D. Ill. 2005); *Ellis v. Sheahan*, 2004 WL 2392055, *2 (N.D. Ill. 2004); *Garrido v. Cook County Sheriff's Merit Board*, 349 Ill.App.3d 68, 78 (1st Dist. 2004); 55 ILCS 5/3-7012. Both Plaintiffs Leibas and Barker have been deprived of their positions as Correctional Officers through Reierson's actions. *FAC* ¶¶86 (Barker was forced to take an AAII position at a $20,000 loss), 87 (Leibas has been forced onto disability at the cost of 1/3 of her current salary). Neither Plaintiff was afforded a hearing before these losses. *FAC* ¶88. This Court already found a due process violation in *Dargis v. Sheahan* under similar circumstances where the deputy was in "zero-pay status," although technically not terminated. *Dargis*, 2005 WL 946909 at *10. Contrary to Defendants' characterization of Leibas' and Barker's claim as being about "reassignment," it is actually about being removed from their positions and taking a significant loss in pay in both instances. *FAC* ¶¶86, 87. Losses in pay such as this *do* trigger due process protections. *Lett v. City of Chicago*, 2019 WL 1200609 at *4 (N.D. Ill. 2019); *Grady v. Bd. of Trs. of N. Ill. Univ.*, 78 F. Supp. 3d 768, 777 (N.D. Ill. 2015) (noting that due process protections are triggered by indirect economic effects); *Head v. Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803 (7th Cir. 2000) (accord). Barker, moreover, was forced to accept an AAII position apart from her Correctional Officer position. *FAC* ¶86. Plaintiffs have adequately stated a protected property interest that triggers due process protections.

14

Defendants next argue that Plaintiffs have not availed themselves of existing state remedies, which they claim include writs of certiorari and mandamus. But this flies in the face of *Dargis*, in which this Court ordered a hearing before the Merit Board as part of its ruling on the due process claim. *See Dargis v. Sheahan*, 526 F.3d 981, 991 (7th Cir. 2008). The precise problem here is that Plaintiffs Leibas and Barker were deprived a pay with no such hearing, or even notice or opportunity to be heard. As in *Dargis*, the court should order a similar hearing.

Moreover, Defendants (and the Courts, too, it seems) do not state *how* mandamus or certiorari are even available remedies for this situation. What is the clear duty of the public official and clear right that Plaintiffs would be seeking to enforce under a mandamus action? Or what are petitioning a court for when they ask for a writ of certiorari? Plainly, these remedies just do not fit the instant facts, and Defendants do not explain how those remedies are supposed to work here. *See, e.g.*, *Ryan v. City of Chicago*, 2019 IL App (1st) 181777 (1st Dist. 2019) ("The extraordinary writ of mandamus is not appropriate to regulate a course of official conduct or enforce the performance of official duties generally" and recognizing that a plaintiff seeking mandamus must establish a clear right to relief, a clear duty by the public official to act, and clear authority of the official to comply." (internal quotations omitted)). Notably, none of the cases that extol the virtues of mandamus and certiorari ever explain how those are adequate state law remedies, either. *See, e.g.*, *Lett*, 2019 WL 1200609 at *4 (N.D. Ill. 2019); *Parisi v. Village of Deerfield*, 2008 WL 4865555 (N.D. Ill. 2008) (noting mandamus and certiorari were available state remedies but never explaining *how* those are adequate remedies).

Plaintiffs submit that mandamus and certiorari simply are not adequate remedies here.

15

## VII. Donis' Prior Settlement Has Nothing To Do With This Case.

This argument fails because nothing about Plaintiff Donis' 2017 lawsuit related to the factual allegations in this one. *See Donis v. Cook County, et al.*, 17-cv-4212 (Dkts 1, 14). In an accompanying motion for leave to file the settlement agreement under seal, Donis will provide the Court a complete copy of the settlement agreement in 17-cv-4212; however, the relevant portion of that Agreement contains the following language:

> The general release in this section shall not apply to: (i) claims relating to the enforcement of this Agreement; (ii) claims that arise from any event that occurs after the date this Agreement is signed; (iii) claims relating to rights, if any, for benefits or other compensation pursuant to the terms of any benefit plan, including any pension; and (iv) claims or rights that may not be waived under applicable law, including his Worker's Compensation claims in Case Number WC 003856.

*See Exhibit A* (pending under seal motion). The Agreement was signed in July 2018, before any of the instant factual allegations occurred, and the Agreement is no bar to this claim. *Id.* Further, the FAC pleads that Donis filed his EEOC Charge in April 2019, long after July 2018, and that the factual allegations underlying his claim began in or around August 2018. *See FAC* ¶29. Paragraph 41 emphasizes that no Plaintiff received the Reierson letter prior to "Fall 2018." *FAC* ¶41. Frankly, Defendants' argument on this is frivolously wrong on the facts alleged here, the scope of the prior lawsuit, and the language of the settlement agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Motion to Dismiss (Dkts. 11-12) in its entirety.

DATED: March 2, 2020

                                            Respectfully submitted,

                                            */s/ Cass T. Casper*
                                            _____
                                            Plaintiffs' Attorney

*Cass T. Casper, Esq.*
TALON LAW, LLC

105 West Madison Street, Suite 1350
Chicago, Illinois 60602
Phone: (312) 351-2478 | Fax: (312) 276-4930
Email: ctc@talonlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that he served the foregoing document on counsel for Defendants via this Court's CM/ECF filing system, and that such counsel is a registered e-filer.

*/s/ Cass T. Casper*

Cass T. Casper, Esq.