**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IRMA G. LEIBAS, FRANK DONIS,** | ) | |
| **BARBARA TAGUE, LUCY DIGIOIA, and** | ) | |
| **TAMIKA BARKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19 C 7592** |
| | ) | |
| **THOMAS J. DART, Sheriff of Cook County,** | ) | **Judge Rebecca R. Pallmeyer** |
| **in his official capacity, REBECCA REIERSON,** | ) | |
| **and COUNTY OF COOK, a unit of local** | ) | |
| **government, as indemnitor,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Irma Leibas, Frank Donis, Barbara Tague, Lucy DiGioia, and Tamika Barker are employed as Correctional Officers or Deputy Sheriffs at the Cook County Sheriff's Office ("CCSO"). In this lawsuit, Plaintiffs allege that Defendants subjected them to "sham" ADA accommodation processes that were in fact fitness-for-duty examinations designed to guarantee a determination that they cannot perform their essential job functions. (First Am. Compl. ("FAC") [10] ¶ 4.) Defendants are Thomas J. Dart in his official capacity as Cook County Sheriff; Rebecca Reierson, the Director of Employee Services in the Bureau of Human Resources of the CCSO, in her individual capacity; and Cook County as indemnitor.

All Plaintiffs assert claims against Defendant Dart for discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count I). They also assert claims under 42 U.S.C. § 1983 against Defendants Dart and Reierson for violations of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution (Counts II, III). Additionally, Plaintiff DiGioia brings claims against Defendant Dart for retaliation and interference with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Count IV); Plaintiffs Barker and Leibas bring claims against Defendant Reierson for violations of the Due Process Clause of the

Fourteenth Amendment of the U.S. Constitution (Count V); and all Plaintiffs assert claims for indemnification against Defendant Cook County (Count VI).

Defendants now move to dismiss all claims. As explained here, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### A.    ADA and Equal Protection Claims

Plaintiffs Leibas, Donis, Tague, and DiGioia have been employed with the CCSO since May 2010, February 2006, November 1994, and October 1998, respectively. (FAC ¶¶ 10–13.) The FAC does not identify Plaintiff Barker's start date. (*See id.* ¶ 14.) Each Plaintiff allegedly "has a disability, a record of disability, and is perceived to have a physical disability." (*Id.* ¶ 38.) Plaintiff Leibas alleges that she has scleroderma, lupus, and Raynaud's syndrome, "which are skin and circulatory conditions that require her to wear gloves and a jacket at all times." (*Id.* ¶ 38(a).) She has allegedly performed the essential functions of her position for more than 10 years with accommodations for her conditions. (*Id.*) Plaintiff DiGioia has had fibromyalgia since 2013, making it "more difficult for her to breathe," resulting in a "medical restriction" that prevents her from wearing a vest at work. (*Id.* ¶ 38(b).) Plaintiff Tague alleges that since 2015 she has had "shoulder arthritis that makes it more difficult for her to qualify with a firearm." (*Id.* ¶ 38(c).) Plaintiff Donis alleges that he "has restrictions on his right knee resulting from an on-the-job injury." (*Id.* ¶ 38(d).) As a result, he has "medical restrictions on prolonged kneeling, squatting, standing, and running/walking long distances." (*Id.*) Plaintiff Barker allegedly "has a chronic migraine condition that can be induced by stress." (*Id.* ¶ 38(e).) Like Leibas, Plaintiffs DeGioia, Tague, and Baker have at all times been able to perform their essential job functions with an accommodation. (*Id.* ¶¶ 38 (b), (c), (d), (e).)

Plaintiffs allege that starting in or around August 2018, Defendant Reierson informed them for the first time that "they could not perform the essential functions of their job[s]." (*Id.* ¶ 39.) In

a letter,[1] Defendant Reierson allegedly advised Plaintiffs that they had three options: (1) "[p]resent updated medical documents to [Human Resources] indicating you no longer have restrictions that prevent you from performing the essential functions of your position with or without an accommodation"; (2) request a reasonable accommodation under the ADA; or (3) "[i]f you are not able to perform the essential functions of your position under 1 or 2 above, take a skills assessment to determine if you qualify for another vacant position at the CCSO." (*Id.* ¶ 39.) Plaintiffs allege that before the fall of 2018, none of them had "ever received a letter/phone call such as this," despite that their medical restrictions had been "in place for a substantial period of time." (*Id.* ¶ 41.)

In response, each Plaintiff requested a reasonable accommodation under the ADA and completed ADA accommodation paperwork. (*See, e.g.*, *id.* ¶¶ 43–45, 50.) Defendants did not grant their requests for accommodation, Plaintiffs allege, and instead determined based on their responses that they "are unable to perform the essential functions of the job." (*Id.* ¶ 43.) Plaintiffs conclude that the three options Defendant Reierson offered them were a "sham" and that Defendants are "using Plaintiffs' completed ADA accommodation request paperwork" as a disguised fitness-for-duty examination. (*Id.* ¶¶ 43–45; *see also, e.g.*, *id.* ¶ 4.) Plaintiffs allege, further, that the fitness-for-duty examinations are designed to prove that they cannot perform their essential job functions. (*See id.* ¶ 4(b) (alleging that the fitness-for-duty examinations "guarantee[ ] that the employee will be determined unable to perform the essential functions of the job"); *id.* ¶ 44 (similar).)

As part of the ADA accommodation process, Plaintiffs allege, they were required to complete checklists stating whether they could perform the listed essential job functions. (*Id.* ¶ 48.) According to Plaintiffs, the checklists do not "reflect the actual . . . experience of

---

[1] Defendant Reierson allegedly contacted Plaintiff DiGioia by telephone, not by letter. (*Id.* ¶¶ 39–40.)

occupants of [their] job titles" and are "specifically designed" to be so "broad and vague" that Defendants can determine that nearly every employee with a medical restriction is unable to perform essential job functions. (*Id.* ¶ 51(a), (b).) Thus, the checklists allegedly include "marginal functions that are not essential"; do not "account for the consequences of employees performing or not performing certain job duties"; and do not "account for the amount of time or importance of a listed function." (*Id.* ¶ 51(d)–(f).) Likewise, the checklists allegedly are not "based on input from front-line supervisors" to ensure that they "reflect[ ] the actual tasks being performed by Deputy Sheriffs/Correctional Officers." (*Id.* ¶ 51(i).)

Plaintiffs allege that Defendants developed the checklists in 2017 or 2018 (*id.* ¶ 52), change them regularly (*id.*), and "tailor[ ]" them to "fish out" employees with disabilities. (*Id.* ¶¶ 52, 56.) For example, Plaintiffs allege that for Tague, whose medical restriction makes it difficult for her to "qualify with a firearm" (*id.* ¶ 38(c)), Defendants "applied the Essential Functions Checklist to her as requiring that she be able to qualify annually with a duty weapon." (*Id.* ¶ 53.) According to Plaintiff, "dozens of Sheriff's Officers have not been doing so for years and there are dozens of assignments where duty weapons are not required." (*Id.*) Notably lacking from the FAC, however, is an allegation that essential functions checklists given to other Sheriff's Officers did not include qualifying with a firearm. Plaintiffs also allege that although both Plaintiffs Leibas and Barker were Correctional Officers, the checklists they were directed to complete (included as screen shots in the FAC) differed. (*See id.* ¶¶ 54–56.) The FAC does not state whether Leibas and Barker ever worked as Correctional Officers at the same time, however. And although the FAC alleges that Leibas and Barker received the checklists in or after August 2018 (*see, e.g.*, *id.* ¶ 39), it does not specify whether they received the checklists at the same time. Nor have Plaintiffs identified the specific differences between the checklists. The court observes that Plaintiff Leibas's checklist contained 12 items, unranked as to importance, while Plaintiff Barker's contained just 10 items, each rated as "High," "Medium," or "Low." (*See id.* ¶¶ 54–55.) The extra items on Leibas's checklist were: "Work any shift and location and be available to work additional consecutive shifts

4

based on operational needs," and "Participate in all training, annual qualifications and other testing required by the Sheriff's Office or state law to maintain correctional officer certification." (*Compare id.* ¶ 54 *with id.* ¶ 55.)

Plaintiffs allege that as a result of the "sham" ADA accommodation process, they have "lost pay and benefits, including overtime opportunities, have been segregated and transferred to non-bid positions,[2] have been forced onto disability under the Cook County Pension Fund, and have suffered . . . extreme stress and anxiety." (*Id.* ¶ 59.) Plaintiffs assert that they were targeted for this mistreatment, in that Defendant Reierson "offered alternative job positions at the same rate of pay to some disabled employees, but not to [them]." (*Id.* ¶ 64.) Plaintiffs also allege that "there are dozens of assignments" where they could have been placed, "including External Operations, Records, Sanitation, Central Kitchen, Division 5," and others. (*Id.*) Plaintiffs allege, and Defendants do not dispute, that they have exhausted their administrative remedies for their discrimination claims. (*See id.* ¶¶ 23–31; *see generally* Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' FAC ("Defs.' Br.") [12]; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") [26]).

**B.     FMLA Interference and Retaliation Claims**

Plaintiff DiGioia alleges that Defendant Dart retaliated against her for requesting FMLA leave and interfered with her FMLA rights. (*See id.* ¶¶ 81–82.) DiGioia submitted "a completed FMLA certification packet for a family member" to the CCSO's Human Resources Department on August 20, 2019. (*Id.* ¶ 77.) On August 28, 2019, the Human Resources Department allegedly asked her "to update her medical restrictions for her ADA accommodation." (*Id.* ¶ 78.) On September 4, 2019, "in the same email chain as DiGioia's request for FMLA certification," Defendant Reierson reminded DiGioia to "update her medical restrictions as soon as possible." (*Id.* ¶ 79.) "Later," Plaintiff DiGioia alleges (she does not say precisely when), Defendant Reierson "met her at her workplace" to discuss her medical restrictions and advised her that she

---

[2]     Plaintiffs do not define a "non-bid position."

could not perform the essential functions of her job.  (*Id.* ¶ 80.)[3]

## C.    Due Process Claims

Plaintiffs Barker and Leibas contend that they have "constitutionally-protected property interests in their continued employment" under the Cook County Sheriff's Merit Board Act, 55 ILCS 5/3-7012. (FAC ¶ 85.)  Around February 5, 2019, Defendants allegedly used the "sham" ADA accommodation process to force Plaintiff Barker out of her job as a Correctional Officer and into a job as an Administrative Assistant.  (*Id.* ¶¶ 14, 86.)  Plaintiffs allege that Defendants similarly forced Plaintiff Leibas, who is also a Correctional Officer, "onto a period of disability."  (*Id.* ¶ 87.)  Neither Plaintiff received a hearing, they allege, and both suffered financial losses:  Barker's annual salary was reduced by $20,000 and Leibas's monthly salary was reduced by 1/3.  (*Id.* ¶¶ 86–88.)   Additionally, Plaintiff Leibas alleges that she will be "faced with imminent reassignment as a loss in salary (like Barker)" when her period of disability ends in March 2020.  (*Id.* ¶ 87.)  The court is unaware whether Defendants have in fact reassigned Leibas, now that March 2020 has passed.

## DISCUSSION

Defendants have moved to dismiss the First Amended Complaint in its entirety. Defendants contend Plaintiffs have not sufficiently alleged that they are disabled within the meaning of the ADA, and that the ADA permits an employer to inquire about medical conditions so long as the inquiries are job-related and consistent with business necessity.  Plaintiffs' constitutional and FMLA claims fail, as well, Defendants contend.  They argue, further, that Defendant Reierson is entitled to qualified immunity and Plaintiffs' *Monell* claims fail because Plaintiffs have not alleged action by an individual with policy-making authority.  Finally,

---

[3]      It is unclear to the court whether Defendant Reierson contacted Plaintiff DiGioia about her medical restrictions for the first time in September 2019, or whether she had previously contacted her in August *2018*.  (*See, e.g.*, *id.* ¶ 39 (alleging that Defendants contacted each Plaintiff about medical restrictions "[b]eginning in or about August 2018").)

Defendants maintain that Plaintiff Frank Donis's claim is barred by *res judicata*.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Word v. City of Chicago*, 946 F.3d 391, 393 (7th Cir. 2020).

A.      **ADA Claims**

The ADA provides that no "covered entity shall discriminate against a qualified individual on the basis of disability," including in regard to advancement or discharge of employees and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). To establish disability discrimination under the ADA, a plaintiff must show that plaintiff (1) is disabled within the meaning of the ADA, (2) is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) suffered from an adverse employment action because of a disability. *See, e.g.*, *Hoppe v. Lewis Univ.*, 692 F.3d 833, 83839 (7th Cir. 2012). "Normally [a plaintiff] also must allege what exactly makes him disabled." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42

U.S.C. § 12102(2)(A). The term "substantially limits" "is not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i).[4]

As Defendants observe, "[n]ot every medical affliction" constitutes a disability under the ADA. (Defs.' Br. at 4 (quoting *Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006)). Bare allegations that plaintiffs suffer from medical conditions, moreover, do not state a claim for disability discrimination. (*See* Defs.' Br. at 4 (citing *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 893 (N.D. Ill. 2010).) Defendants contend that none of the Plaintiffs have adequately alleged that their medical conditions substantially limit any major life activity, but the court disagrees. Plaintiffs DiGioia and Donis have provided more than conclusory allegations concerning their medical conditions: DiGioia alleges that she cannot wear a vest at work because fibromyalgia makes it difficult for her to breathe. Donis alleges that a knee injury restricts his ability to kneel, squat, stand, run, or walk long distances. Breathing, walking, and bending are major life activities. *See* 42 U.S.C. § 12102(2)(A). Plaintiff Leibas allegedly suffers from scleroderma, Lupus, and Raynaud's syndrome, conditions that can cause symptoms such as tightness in skin and connective tissues and numbness in fingers and toes. (*See* Def.'s Br. at 3 nn.1–3.) Plaintiff Leibas does not allege that she suffers from any of these symptoms, but (perhaps to prevent such symptoms), she does assert that her medical conditions require her to wear gloves and a jacket. Plaintiff Tague and Barker's allegations are more limited; Tague alleges that she suffers from arthritis, but says nothing about her symptoms beyond asserting that arthritis makes it difficult for her to "qualify" with a firearm. Barker suffers from chronic migraines, perhaps imposing difficulties with concentrating or thinking, *see* 42 U.S.C. § 12102(2)(A), but the FAC makes no such allegation, nor do the briefs elaborate. (*See* Pls.' Resp. to Defs.' Mot. to

---

[4]     "EEOC regulations interpreting the ADA are entitled to deference . . . unless they are arbitrary, capricious, or manifestly contrary to the statute." *Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 887 (7th Cir. 2019) (internal quotation marks omitted).

Dismiss ("Pls.' Opp.") [17] at 2–3.)

Whether or not these allegations establish that all Plaintiffs were actually disabled, Plaintiffs contend they have adequately pleaded that they are "regarded as" disabled. (*See* Pls.' Opp. at 3; 42 U.S.C. § 12102(1)(C)). Specifically, Plaintiffs maintain that their allegations show that Defendants either mistakenly believed they had substantially limiting impairments or believed that they had "substantially limiting impairment[s] when, in fact, the impairment[s] [were] not so limiting." (Pls.' Opp. at 3 (quoting *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005) (internal quotation marks omitted)). As Defendants point out, the FAC contains no allegations that Defendants mistakenly believed Plaintiffs were disabled. (Defs.' Reply at 1–2.) The FAC can, however, reasonably be construed as alleging that Defendants believed Plaintiffs had substantially limiting impairments and that those impairments were, in fact, "not so limiting." *Nese*, 405 F.3d at 641.[5] Thus, Plaintiffs allege that although they have medical restrictions of which Defendants are aware, they have been performing their essential job functions with accommodations for those restrictions and can continue doing so. Plaintiffs allege, further, that Defendants themselves concluded, after Plaintiffs submitted ADA accommodation paperwork, that those same medical restrictions render Plaintiffs unable to perform their essential job functions. In other words, Plaintiffs allege that their disabilities are not "so limiting" that they cannot perform their essential job duties, *Nese*, 405 F.3d at 641, and Defendants drew the opposite conclusion during the ADA accommodation process.

Defendants also argue that the court must dismiss Plaintiffs' ADA claims because the FAC does not plausibly allege that Plaintiffs suffered discrimination. Defendants here urge that the

---

[5] The court also notes—though the parties do not—that after the 2008 amendments to the ADA, a plaintiff need not show that the employer regarded her as having an impairment that *substantially limits* one or more major life activities. *See, e.g.*, *Richardson*, 926 F.3d at 886–87 (to succeed under the "regarded as" theory, a plaintiff must "establish he was subject to a prohibited employment action 'because of an *actual or perceived* physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*'" (emphasis added) (quoting 42 U.S.C. § 12102(3)(A)).

alleged fitness-for-duty examinations were lawful inquiries into Plaintiffs' medical conditions and job capabilities. Under the ADA,

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, *unless such examination or inquiry is shown to be job-related and consistent with business necessity*.

42 U.S.C. § 12112(d)(4)(A) (emphasis added). "[A] medical examination is job related and consistent with business necessity if the employer has a reasonable belief based on objective evidence that a medical condition will impair an employee's ability to perform essential job functions or that the employee will pose a threat due to a medical condition." *Painter v. Ill. Dep't of Transp.*, 715 F. App'x 538, 541 (7th Cir. 2017). Further, the ADA permits a covered entity to "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B).

Defendants argue that their "inquiry into the nature and severity of Plaintiffs' restrictions" was "job-related," consistent with business necessity, and intended to ascertain Plaintiffs' ability to "perform job-related functions." (Defs.' Br. at 5.) Perhaps the evidence will bear out Defendants' theory. But Plaintiffs' allegations permit a reasonable inference that Defendants' inquiries into their medical conditions were not for the legitimate purposes just referenced. Plaintiffs allege that Defendants required them to complete essential job function checklists that, by design, included non-essential job functions they knew Plaintiffs could not perform. According to Plaintiffs, Defendants' intent was to remove Plaintiffs from their positions because of their disabilities, or conditions regarded as such. In support, Plaintiffs point out that Defendants created the checklists recently, after Plaintiffs had been working successfully in their positions—with medical restrictions—for years. The court concludes Plaintiffs have adequately alleged that Defendants implemented a "sham" ADA accommodation process to remove disabled employees from positions as Correctional Officers and Deputy Sheriffs. These allegations permit a conclusion that Defendants' inquiries into Plaintiffs' medical conditions were not job-related,

consistent with business necessity, or aimed at determining whether Plaintiffs could perform job-related functions.

The cases cited by Defendants, many of them decided at the summary judgment stage, do not support dismissal of the complaint in this case. In *Painter,* the court concluded that the evidence—including expert testimony—left no question that the employer administered the medical examinations "based on [a] reasonable concern for the safety of its employees." *Id.* at 541–42; *see also id.* at 539 (affirming district court's judgment that the undisputed evidence required a conclusion that the challenged medical examinations were job-related and consistent with business necessary). In *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009), the evidence on summary judgment showed that the employer had a "genuine concern" that the employee's behavior "was adversely impacting her ability to perform her job." The court determined that the employer's decision to refer the employee for a fitness-for-duty examination therefore was consistent with its obligation to "ensure that its workforce is both mentally and physically capable of performing . . . mentally and physically demanding work." *Id.* Here, Plaintiffs sufficiently allege that Defendants lacked a genuine concern that they could not perform their essential job functions. Finally, in *Malkowski v. PTC Capital Corp*., No. 96 C 3109, 1998 WL 142374, at *5 (N.D. Ill. Mar. 19, 1998), the court stated that asking an employee to take a medical examination does not on its own "suggest that [the employee] was being discriminated against." In the instant case, Plaintiffs do not allege only that Defendants required them to take medical examinations—they assert that Defendants inquired into their medical conditions for the purpose of disqualifying them.

Nor does the fact that Plaintiffs requested accommodations under the ADA by itself defeat their challenge to the process that Defendants imposed. (*See* Defs.' Br. at 6 (citing *Atkinson v. SG Ams. Sec., LLC*, 693 F. App'x 436 (7th Cir. 2017))). In *Atkinson*, the plaintiff claimed that his employer violated Section 12112(d)(4)(A) of the ADA by requesting a medical examination that allegedly was a "fishing expedition." 693 F. App'x at 440. The court affirmed dismissal of the

11

complaint because the plaintiff "admit[ted] that he asked for disability accommodations, and the company was entitled under the ADA to request a medical exam to determine what accommodations were medically necessary." *Id.* Unlike in *Atkinson*, Plaintiffs allege that Defendants gave them no choice but to request accommodations under the ADA—despite that they were performing their essential job functions—and then administered fitness-for-duty examinations designed to guarantee failure. Plaintiffs, therefore, have sufficiently pleaded that they suffered discrimination, and their ADA discrimination claims may proceed.[6]

**B.    Equal Protection Claims Against Defendant Reierson**

Invoking 42 U.S.C. § 1983, Plaintiffs bring claims against Defendant Reierson in her individual capacity for disability discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. As Plaintiffs are not pursuing a "class of one" case (Pls.' Opp. at 7), the court addresses only whether they state a claim for discrimination based on their membership in a class of disabled persons.

Defendants argue that because the ADA has its own comprehensive enforcement mechanism, Plaintiffs cannot use Section 1983 to hold Reierson liable for alleged ADA violations. (*See* Defs.' Br. at 7; Defs.' Reply at 6.) As the court reads their complaint, however, Plaintiffs are not using Section 1983 to enforce the ADA; they are instead asserting Equal Protection claims based on alleged differential treatment because of their status as disabled persons. (*See* Pls.' Opp. at 11.) In the cases cited by Defendants, the plaintiffs were not using Section 1983 to assert constitutional claims. In *Tri-Corp Housing Inc. v. Bauman*, 826 F.3d 446 (7th Cir. 2016), for example, the plaintiffs sought to expand the pool of persons liable for damages under the ADA by bringing a Section 1983 action asserting ADA violations. *Id.* at 448–49. The court held that Section 1983 "cannot be used to alter the categories of persons potentially liable in private

---

[6]    Plaintiffs have alleged disability discrimination; they have not explicitly alleged failure-to-accommodate claims (*see generally* Pls.' Opp.), so to the extent they are being asserted, the court dismisses them without prejudice.

actions" under the ADA. *Id.* at 449; *see also Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19–21 (1981) (determining that "express remedies" provided in two environmental protection statutes reflected Congress's intent "to supplant any remedy that otherwise would be available under § 1983"); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985) (plaintiffs conceded that their Section 1983 claim was based on alleged violations of a statute that "provides its own remedial scheme"); *Tate v. Dart*, No. 17 C 8888, 2019 WL 1200740, at *4 (N.D. Ill. Mar. 14, 2019) (dismissing the plaintiff's Section 1983 claim for ADA retaliation because it "does not employ § 1983 to bring a claim under the Constitution" and instead "employs the statute to bring a claim under the ADA"); *Dargis v. Sheahan*, No. 02 C 6872, 2005 WL 946909, at *9 (N.D. Ill. Mar. 25, 2005) (dismissing claim brought under Section 1983 for alleged violations of the ADA), *aff'd*, 526 F.3d 981 (7th Cir. 2008).

Significantly, the Supreme Court has stated that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. . . . If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001). As another court in this district has recognized, several circuits have interpreted *Garrett* as holding that plaintiffs cannot bring any disability-based claim under the Equal Protection Clause. *See Arce v. Chicago Transit Auth.*, 193 F. Supp. 3d 875, 893 (N.D. Ill. 2016) (citing cases). Before the Supreme Court decided *Garrett*, the Seventh Circuit took the opposite position. *See Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737–38 (7th Cir. 2000) ("Disabled individuals, like any class, are protected by the Equal Protection Clause of the Fourteenth Amendment. We have previously held that the level of protection afforded to this class is that of rational basis review." (citations omitted)); *see also Erickson v. Bd. of Governors of State Colls. & Univs. for Ne. Ill. Univ.*, 207 F.3d 945, 951 (7th Cir. 2000) ("Rational discrimination against persons with disabilities is constitutionally permissible."). The Seventh Circuit has not reversed course post-*Garrett*, and other courts in this district recently

have evaluated disability-based Equal Protection claims under the rational basis test. *See Arce*, 193 F. Supp. at 894; Pls.' Opp. at 7 (citing same); *see also, e.g.*, *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 263 F. Supp. 3d 705, 727–28 (N.D. Ill. 2017); *Black ex rel. J.D. & J.A.D. v. Littlejohn*, No. 19 C 2585, 2020 WL 469303, at *2–3 (N.D. Ill. Jan. 28, 2020). This court will do the same.

State action "survives rational basis scrutiny if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. . . . [A]ny rational basis will suffice, even one that was not articulated at the time the disparate treatment occurred." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946–47 (7th Cir. 2009) (internal quotation marks omitted). The party challenging state action bears the burden of "eliminat[ing] any reasonably conceivable state of facts that could provide a rational basis for the classification." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). If the court "can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Jackson v. Vill. of W. Springs*, 612 F. App'x 842, 847 (7th Cir. 2015) (internal quotation marks omitted).

Defendants argue that the conduct alleged in this case easily survives "rational basis" review. As a "paramilitary organization" whose employees "are the first line of defense against lawlessness," Defendants contend, CCSO must ensure that Correctional Officers and Deputy Sheriffs can perform a range of duties. (Defs.' Br. at 9 (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 638–39 (7th Cir. 2002); *see also Miller v. Ill. Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir. 1997) (disabled correctional officer was not qualified for position where she could perform only a narrow set of duties: operate a telephone switchboard or issue weapons); Defs.' Br. at 89 (citing same)). According to Defendants, there is, thus, an obvious rational basis for requiring Plaintiffs to complete paperwork specifying their ability to perform multiple essential job functions.

The court agrees that requiring workers to confirm their ability to perform essential job functions is reasonable. Although Plaintiffs make much of the fact that the checklists for persons in the same position allegedly were not identical, the court does not find this suspicious by itself. Job descriptions or requirements might well change or be refined over time, and Plaintiffs'

allegations do not suggest that the changes from one list or another were unusual or were obviously intended to disqualify them. For example, although Defendants allegedly included qualifying with a firearm in Plaintiff Tague's checklist, the FAC does not specify whether checklists for employees in the same position at the same time contained that job function. And although Plaintiffs Leibas and Barker allegedly received different checklists, the FAC does not indicate whether those Plaintiffs worked as Correctional Officers at the same time or received their checklists at the same time. Moreover, Plaintiffs do not explain how the alleged differences in Leibas's checklist (which concerned the ability to work any shift and participate in all training and testing) had anything to do with her skin and circulatory conditions.

More troubling, however, are allegations that the checklists were compiled without input from personnel having the most knowledge of essential job functions; appeared to include non-essential job functions; were not sensitive to the amount of time a typical employee would devote to any particular task; and were imposed on Plaintiffs for the first time only after they had been performing their job duties without incident for years. There may be a legitimate need for Correctional Officers and Deputy Sheriffs to rotate through multiple job functions, and there may well be other rational bases for developing and enforcing certain job requirements challenged here. That evidence (at trial or on summary judgment) might ultimately defeat Plaintiffs' claims does not, however, require dismissal of their Equal Protection challenge.

Defendants maintain that even if the allegations support Equal Protection claims, Defendant Reierson is entitled to qualified immunity. The court disagrees. "A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal quotation marks omitted). Defendants appear to argue that because the ADA in some circumstances permits employers to ask employees about their medical conditions and/or their ability to perform essential job functions, Defendant Reierson's actions did not violate a clearly established right. (*See* Defs.' Br.

15

at 10 (citing *Spring-Weber v. City of Chicago*, No. 16 C 8097, 2017 WL 1316267, at * 9 (N.D. Ill. Apr. 10, 2017) (requiring firefighters to undergo psychiatric testing and submit a HIPAA release did not violate clearly established right to privacy, given that firefighters hold a "safety-sensitive position subject to warrantless drug testing" and "the absence of contrary authority from the Seventh Circuit").)  Plaintiffs, however, plausibly allege that Defendant Reierson inquired into their medical conditions not for a legitimate purpose, but rather to force them out of their positions because of their disabilities.  Every reasonable official would have understood that such conduct violates the Equal Protection Clause.  Indeed, in *Spring-Weber*, the court stated that "imposing different conditions on an employee because of her disability can violate rights clearly established under the Equal Protection clause."  2017 WL 1316267, at * 9.  The doctrine of qualified immunity does not protect Defendant Reierson.

## C.  Equal Protection Claims Against Defendant Dart

Plaintiffs also assert claims against Defendant Dart in his official capacity for the alleged Equal Protection violations.  An official capacity suit is treated as a suit against the municipal entity:  here, Cook County.  *See, e.g.*, *McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 888 (7th Cir. 2018).  The court notes that according to the FAC, Illinois statutes require Cook County "to assume financial responsibility for the actions committed by its officials or employees," such as Dart and Reierson.  (FAC ¶¶ 89–90.)  Plaintiffs' municipal liability claims—which if successful, would require Cook County to pay damages for Defendants' conduct—therefore appear to be superfluous.  Even if they are not, the court denies Defendants' motion to dismiss them.  To state a claim for municipal liability, a plaintiff must plead that one of the following caused her constitutional injury:  "(1)  the enforcement of an express policy of the [county], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority."  *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (internal quotation marks omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  According to Defendants, Plaintiffs concede that they are not

proceeding under an express-policy theory. (*See* Defs.' Reply at 7 (citing Pls.' Opp. at 12).) Accordingly, Defendants focus their arguments on the other methods of establishing municipal liability. The court does not read the FAC or Plaintiffs' brief as conceding the absence of an express policy. Plaintiffs do contend that they "have adequately stated *Monell* pattern-and-practice and final policymaker-based claims" (Pls.' Opp. at 13), but they appear also to argue that the CCSO has an express policy of requiring "sham" fitness-for-duty examinations—and that Dart, as Sheriff, enforces that policy. (*See id.* at 12 ("Dart enacted policies and practices of subjecting Plaintiffs and similarly-situated officers to fitness-for-duty examinations under the auspices of the ADA accommodation process . . . .").) For reasons already explained, the court concludes that Plaintiffs have sufficiently alleged that the CCSO has an express policy of requiring "sham" fitness-for-duty examinations and that the policy caused their injuries. Plaintiffs also allege that Defendant Dart "enact[ed]" that policy and enforced it through the actions of "his employee and agent, Defendant Reierson . . . ." (FAC ¶¶ 68, 70.) Therefore, Plaintiffs have stated a claim for municipal liability based on the enforcement of an express CCSO policy.

**D.    Due Process Claims**

Presumably invoking Section 1983, Plaintiff Barker asserts a procedural due process claim against Defendant Reierson in her individual capacity for allegedly forcing Barker into a different job (Administrative Assistant) without a hearing, which resulted in a pay decrease. (*See* FAC ¶¶ 86, 88.) Plaintiff Leibas asserts a procedural due process claim against Defendant Reierson for allegedly "forc[ing] [her] onto a period of disability" without a hearing, which likewise resulted in a pay decrease. (FAC ¶¶ 87–88; *see* Pls.' Opp. at 1415.) Defendants move to dismiss both claims. To prevail on a procedural due process claim, a plaintiff must show that (1) she has a cognizable property interest; (2) the defendant deprived her of that interest; and (3) the defendant did so without due process. *See, e.g., Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014); *see also Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) ("A procedural due process claim under § 1983 requires that the plaintiff allege

(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." (internal quotation marks omitted).

The parties dispute whether Plaintiffs have cognizable property interests. Both sides acknowledge that the Fourteenth Amendment does not create property rights. *See, e.g.*, *Price*, 755 F.3d at 607. Rather, "property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* (internal quotation marks omitted). Plaintiffs allege that the Cook County Sheriff's Merit Board Act ("Merit Board Act"), 55 ILCS 5/3-7012, gives them a constitutionally protected interest in their continued employment as Correctional Officers. In relevant part, the statute provides:

> Except as is otherwise provided in this Division, no deputy sheriff in the County Police Department, no full-time deputy sheriff not employed as a county police officer or county corrections officer and no employee in the County Department of Corrections shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon upon not less than 10 days' notice at a place to be designated by the chairman thereof.

55 ILCS 5/3-7012.

According to Defendants, Plaintiffs Barker and Leibas concede that they have not been removed, demoted, or suspended. They argue that these Plaintiffs in effect have been reassigned within the CCSO and that there is no property interest in avoiding reassignment. (*See* Defs.' Br. at 13.) Plaintiffs contend that being forced into a different job or onto disability leave is tantamount to removal. (*See* Pls.' Opp. at 14.). However the job actions challenged in this case are characterized, there is room for debate on whether those job actions implicate due process. Addressing a similar statute, the Seventh Circuit has stated that "[t]here is no Illinois law . . . that protects a Chicago patrol officer from adverse action short of discharge or suspension." *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977) (determining that because a police officer does not have a "state law entitlement to a particular situation or job,"

18

transferring an officer "to a job imposing substantially greater burdens or with less pay" does not implicate the Due Process Clause).  In *Swick v. City of Chicago*, 11 F.3d 85, 86–87 (7th Cir. 1993), the court determined that where the defendant placed a patrol officer on involuntary paid sick leave, it did not suspend him within the meaning of a statute similar to the Merit Board Act. *See also id.* (explaining that the statute defines suspension, discharge, and removal as "disciplinary measure[s]," and that "[p]lacing a person on sick leave is not a disciplinary measure"). And in *Deen v. Darosa*, 414 F.3d 731 (7th Cir. 2005), the court determined that a former Illinois State Police officer "did not have a constitutionally protected property interest in reinstatement" from "medical leave status to active duty . . . ."  *Id.* at 732.  It also stated that "the eventual exhaustion of medical leave pay and benefits does not mean that [the plaintiff] had a legitimate claim of entitlement to reinstatement to active duty."  *Id.* at 734.

On the other hand, the economic losses Plaintiffs here have alleged may be significant. In *Swick* the court stated that it could "imagine a case in which a period of forced inactivity impeded promotional opportunities or had other indirect effects on post-retirement income . . . ." *Swick*, 11 F.3d at 86.  That scenario was "implausible" in *Swick* because the plaintiff "was on the verge of retirement."  *Id.*  There is no indication here that Plaintiffs Barker or Leibas are near retirement; their claims may well present the case that the court "imagine[d]" in *Swick*.  In *Deen*, the court determined that the plaintiff had a "limited property interest in an opportunity to demonstrate his fitness for return to active duty under an [Illinois State Police] policy directive that governs officers' reinstatement from medical leave."  *Deen*, 414 F.3d at 732.  It is unclear from the pleadings whether CCSO policy directives address circumstances in which an employee is involuntarily removed from active duty.  Finally, courts have recognized that although a suspension with pay generally does not deprive an officer of a constitutionally protected property interest, "[a] plaintiff may nonetheless state a claim triggering due process protections if he alleges that paid administrative leave 'imposes a substantial indirect economic effect.'"  *Lett v. City of Chicago*, No. 18-cv-4993, 2019 WL 1200609, at *4 (N.D. Ill. Mar. 14, 2019) (quoting *Palka v.*

*Shelton*, 623 F.3d 447, 452 (7th Cir. 2010); *see also Grady v. Bd. of Trs. of N. Ill. Univ.*, 78 F. Supp. 3d 768, 777–78 (N.D. Ill. 2015) (same). The FAC does not allege that Plaintiffs were suspended or placed on administrative leave, but it does allege that the forced changes in Plaintiffs' positions resulted in substantial income losses.

The court declines to untie this knot because Plaintiffs' due process claim appears to be infirm for an unrelated reason: Plaintiffs have said little about the nature of the protections state law affords them. They do not allege that they availed themselves of state law remedies; that such remedies are inadequate; or that they can state due process claims without these allegations. Neither side recognizes that the pleading requirements regarding state law remedies depend on the type of procedural due process claim being asserted. "To determine whether a defendant provided sufficient procedural due process," a court must "first determine whether the claim is based on established state procedures or on random and unauthorized acts by state employees." *Cannici*, 885 F.3d at 479 (citing *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010)). "If the plaintiff alleges that 'the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing.'" *Leavell*, 600 F.3d at 805 (quoting *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). "Under those circumstances, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Leavell*, 600 F.3d at 805 (quoting *Rivera-Powell*, 470 F.3d at 465 (internal quotation marks omitted)). On the other hand, "a claim based on random and unauthorized acts by state officials does not have the same predictability, and thus, only requires a meaningful post-deprivation remedy." *Cannici*, 885 F.3d at 479 (citing *Leavell*, 600 F.3d at 805). In this circumstance, the plaintiff must "either avail herself of state post-deprivation remedies 'or demonstrate that the available remedies are inadequate.'" *Leavell*, 600 F.3d at 805 (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996)); *see also Cannici*, 885 F.3d at 479. Significantly, a plaintiff need not exhaust state remedies to bring a Section1983 claim, but she nonetheless must demonstrate that those remedies would be

inadequate. *See Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003).

Neither the FAC nor Plaintiffs' briefing states whether Plaintiffs' procedural due process claims are "based on established state procedures or on random and unauthorized acts by state employees." *Cannici*, 885 F.3d at 479. The pleadings, moreover, are so thin on factual allegations that the court cannot reasonably construe the claims one way or another. Plaintiffs do argue that state-law remedies are inadequate because, in their view, there is no case law that discusses what remedies are available and how Plaintiffs can pursue them.[7] (*See* Pls.' Opp. at 15.) That cannot be true, and the court declines to do Plaintiffs' homework. On this record, Plaintiffs have not adequately pleaded their due process claims, and the court dismisses them without prejudice.

## E.    FMLA Claims

Plaintiff DiGioia asserts a claim against Defendant Dart for interference with her FMLA rights. (FAC ¶ 81.) To state an FMLA interference claim, a plaintiff must allege, among other things, that her employer denied her the FMLA benefits to which she was entitled. *See, e.g.*, *Guzman v. Brown Cnty.*, 884 F.3d 633, 638 (7th Cir. 2018) (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). Plaintiff DiGioia does not allege that Defendants denied her request for FMLA leave. Therefore, the court dismisses her FMLA interference claim without prejudice. Plaintiff DiGioia also asserts a claim for FMLA retaliation. (*See* FAC ¶ 82; Pls.' Opp. at 13.) "[T]o prevail on a FMLA retaliation claim, a plaintiff must present evidence that she was subject to an adverse employment action that occurred because she requested or took FMLA leave." *Guzman*, 884 F.3d at 640. Defendants argue that Plaintiff DiGioia has not alleged she suffered an adverse employment action. The FAC is, indeed, vague in this regard: The court is uncertain whether the

---

[7]    Plaintiffs argue that they need not discuss whether state-law remedies are inadequate because in *Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008), the Seventh Circuit affirmed the district court's decision "order[ing] a hearing before the Merit Board as part of its ruling on the due process claim." (Pls.' Opp. at 15.) The court declines to address this argument without knowing which form of procedural due process claim Plaintiffs are advancing.

alleged retaliation was the evaluation of Plaintiff DiGioia's medical restrictions; the determination that she cannot perform the essential functions of her job; her transfer into a "non-bid" position (FAC ¶ 59); or all three. Nonetheless, the pleadings make clear that Plaintiff is proceeding on at least one of these theories. The court, therefore, concludes that Defendants have fair notice of the FMLA retaliation claim and denies their motion to dismiss it.

## F.     Plaintiff Donis's June 2017 Lawsuit

Defendants argue that Plaintiff Donis is barred by the doctrine of *res judicata* from asserting any of the claims he brought in a lawsuit against Dart and the County of Cook that Donis filed in June 2017. (*See* Defs.' Mot. at 14–15). Donis alleged, in relevant part, that the defendants (1) discriminated against him and failed to accommodate his disability in violation of the ADA and (2) retaliated against him for seeking accommodations for his disability. (*See id.*) The conduct in question allegedly began in April 2017. (*See id.*) In July 2018, the parties reached a settlement and the district court dismissed the case with prejudice. (*See id.* at 16.)

"*Res judicata* bars a claim that was litigated or could have been litigated in a previous action when three requirements are met: (1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 332-33 (7th Cir. 2018) (internal quotation marks omitted); *see also, e.g.*, *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008). "[T]he test for an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction." *Kilburn-Winnie*, 891 F.3d at 333 (internal quotation marks omitted).

The allegations in the FAC satisfy the court that the first prong of this test is not met here. The conduct at issue in this case arises out of the alleged "sham" ADA accommodation process that the Defendants initiated in August 2018, when they sent letters or made telephone calls to the Plaintiffs inquiring into their medical conditions. Plaintiffs allege that before August 2018, they had never received communications of this nature. (*See* FAC ¶ 41.) Plaintiff Donis filed his prior lawsuit well before he received that August 2018 letter, and the conduct at issue in the 2017

lawsuit necessarily arose from a different transaction or a different set of operative facts. (*See* Pls.' Opp. at 16.) If Plaintiff Donis later attempts to assert a claim that he asserted or could have asserted in the June 2017 lawsuit, the court will entertain a renewed request to bar him from doing so. At this time, however, there is no basis for granting Defendants' request to "bar Donis from pursuing any claim before June 2, 2017." (Defs.' Br. at 16.) Therefore, the request is denied.

**G.    Indemnification Claim Against Cook County**

Because Plaintiffs have stated claims against Defendants Dart and Reierson, indemnification from Cook County may be required. The court, therefore, denies Defendants' request to dismiss Defendant Cook County from this lawsuit. (*See* Defs.' Br. at 17 n.6.)

**CONCLUSION**

Defendants' Motion to Dismiss Plaintiffs' First-Amended Complaint [11] is granted in part and denied in part. Defendants' motion to dismiss the following claims is granted: (1) Plaintiffs' claims for failure-to-accommodate under the ADA, assuming Plaintiffs are asserting such claims; (2) Plaintiff Barker's and Plaintiff Leibas's procedural due process claims; and (3) Plaintiff DiGioia's FMLA interference claim. Defendants' motion to dismiss all other claims is denied, and they are directed to file an answer in response to all claims that have survived this motion, on or before November 10, 2020.

ENTER:

Dated:    October 19, 2020

_____
REBECCA R. PALLMEYER
United States District Judge